**Frederick Emmet JAMES, Jr.,
Appellant,**

v.

**DIRECTOR OF REVENUE, State of
Missouri, Respondent.**

No. 15945.

Missouri Court of Appeals,
Southern District,
Division One.

March 30, 1989.

Gene Wayne Redding, Elmer J. Meyer & Associates, Branson, for appellant.

William L. Webster, Atty. Gen., Jatha B. Sadowski, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Frederick Emmet James, Jr. ("James") appeals from a judgment affirming the suspension of his driver's license by the Director of Revenue ("the Director"). James maintains the circuit court erred in (1) reviewing the decision of an administrative hearing officer instead of entering judgment based on evidence presented to the circuit court, and (2) basing the judgment on the results of a "breath test" obtained

by coercion and in violation of James' right to consult counsel.

The saga began at 11:37 p.m., January 2, 1988, when a police officer stopped a motor vehicle being driven by James after seeing the vehicle "disobey a red signal." The officer detected "an odor of intoxicants" inside James' vehicle and observed James' eyes "were watery and bloodshot." Asked by the officer whether he had drunk anything, James, according to the officer, replied, "[T]hree beers and two shots of something." The officer administered James "a series of field sobriety tests" and, after observing James' performance, arrested him for driving while intoxicated. James was taken to the police station where the officer administered James a "breath analysis" by means of a "blood alcohol content verifier." The evidence presented to the circuit court regarding that episode will be recounted momentarily. The test showed James had a ".145 percent blood alcohol content."

Acting pursuant to §§ 302.505 [1] and 302.-520,[2] the officer took possession of James'

driver's license and served notice on him that it had been suspended.

A subsequent administrative hearing pursuant to § 302.530 [3] resulted in a decision sustaining the suspension of James' license.

James thereupon filed a petition for trial de novo in the circuit court per § 302.535.[4] The circuit court conducted a trial at which two witnesses testified: the arresting officer and James.

The officer, after narrating the circumstances of the arrest, was asked about the "breath analysis." The officer testified he (a) informed James of the "Miranda rights," [5] (b) asked James to submit to the breath analysis, (c) told James he had the right to refuse, and (d) warned James that if he did refuse his license may be revoked for a year.

On cross-examination by James' lawyer the officer testified that prior to undergoing the breath analysis James "repeatedly asked to take a blood test," and on one occasion said he wanted to speak to his

---

1. References to statutes are to RSMo 1986 except where otherwise indicated. Section 302.-505.1 states: "The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in the person's blood ... was thirteen-hundredths of one percent or more by weight of alcohol...."

2. Section 302.520 states:
"1. Whenever the chemical test results are available to the law enforcement officer while the arrested person is still in custody, and where the results show an alcohol concentration of thirteen-hundredths of one percent or more by weight of alcohol in his blood, the officer, acting on behalf of the department, shall serve the notice of suspension or revocation personally on the arrested person.
2. When the law enforcement officer serves the notice of suspension or revocation, the officer shall take possession of any driver's license issued by this state which is held by the person...."

3. Section 302.530 states:
"1. Any person who has received a notice of suspension or revocation may make a request within fifteen days of receipt of the notice for a review of the department's determination at a hearing....
2. ...

3. ... The hearing shall be conducted by examiners ... employed by the department....
4. The sole issue at the hearing shall be whether by a preponderance of the evidence the person was driving a vehicle under the circumstances set out in section 302.505. The burden of proof shall be on the state to adduce such evidence. If the department finds the affirmative of this issue, the suspension or revocation order shall be sustained. If the department finds the negative of the issue, the suspension or revocation order shall be rescinded.
...."

4. Section 302.535.1 states: "Any person aggrieved by a decision of the department may file a petition for trial de novo by the circuit court. The burden of proof shall be on the state to adduce the evidence. Such trial shall be conducted pursuant to the Missouri rules of civil procedure and not as an appeal of an administrative decision pursuant to chapter 536, RSMo.... The case shall be decided by the judge sitting without a jury...."

5. Presumably the warning ritual required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed2d 694 (1966).

attorney. The officer recounted he told James an arresting officer has the option of determining which type of test shall be given, and that he (the officer) had decided to give the breath test. Asked whether he advised James he would not administer a blood test, the officer answered, "That's correct."

The officer recalled James saying he would not undergo the breath analysis without talking to his attorney. When James asked to call his attorney the officer, so he testified, said, "Fine," and turned toward a door. At that point, according to the officer, James said, "Now, I'll take the test." It was promptly administered. The officer conceded that although there were telephones in a nearby room he never took James to them.

James testified he initially told the officer he (James) refused "to take the breathalyzer," that he wanted to take a blood test, and that he wanted to call his attorney. Asked how the officer reacted to the latter request, James testified the officer backed out of the room. After several seconds elapsed James (so he testified) figured the officer was leaving so he (James) said he would take the test. James added that at a "hearing" in a municipal court the officer had testified he did not know why James was not given an opportunity to use the telephone. James also recalled the officer testifying in municipal court that his purpose in stepping out of the room was to see if the phones were available because, if they were unavailable, James would have been unable to use one.

James objected in the circuit court to the receipt in evidence of the results of the breath analysis arguing, inter alia, that the results were obtained in violation of his right to consult counsel conferred by § 544.170[6] and his right to refuse to submit to the test conferred by § 577.041.1, RSMo Supp.1987.[7] The circuit court stated

the question of admissibility would be taken with the case, with the ruling to be withheld "until after the evidence in its entirety." At the conclusion of the trial the parties were given time to file written suggestions on the admissibility issue.

The circuit court ultimately sent a letter to the lawyers for the Director and James, respectively. The letter said, in pertinent part:

"This is a civil case, not a criminal case. I believe the exclusionary rule regarding the exclusion of testimony or other evidence taken without the benefit of certain warnings or explanations applies only in criminal cases.

This kind of a case is purely civil, as I understand it. If the test is scientifically valid and there is sufficient basis for its admission, the circumstances under which [James] consented or didn't consent are immaterial.

I consider the breath test admissible and the determination of the Director is upheld.... "

The circuit court's judgment provided, in pertinent part:

"It is ... ORDERED, ADJUDGED and DECREED that the decision of the ... Director ... to suspend or revoke [James'] driving privileges in the State of Missouri pursuant to RSMo. 302.500–540 (Supp.1984), is hereby affirmed.... "

James' motion for new trial was denied. This appeal followed. James' first point is:

"The trial court erred in his judgment by upholding and affirming the decision of the Director ... to suspend or revoke Mr. James' driving priviledges [sic] because the trial court passed upon and reviewed the Administrative Hearing Officer's decision, instead of entering a judgment based on the evidence presented at trial by making his own findings of fact and conclusions, and the trial judge,

6. Section 544.170 states: "All persons arrested and confined in any jail ... by any peace officer, without warrant or other process, for any alleged ... criminal offense, or on suspicion thereof ... shall, while so confined, be permitted at all reasonable hours during the day to consult with counsel...."

7. Section 577.041.1, RSMo Supp.1987, states: "If a person under arrest refuses upon the request of the arresting officer to submit to any test allowed under section 577.020, then none shall be given...."

therefore, failed to conduct a hearing de novo."

In support of the point James cites three cases, one of which is *Dove v. Director of Revenue*, 704 S.W.2d 713 (Mo.App.1986). There, as in the instant case, the Director suspended an arrestee's driver's license per § 302.505.1. The suspension was sustained on administrative review; the arrestee then petitioned the circuit court for trial de novo. That court found the administrative hearing practice was violative of the arrestee's constitutional rights of due process, and entered judgment remanding the case to the Director with directions for a new administrative hearing. On appeal by the Director the Western District of this Court held the circuit court erred in determining that the administrative hearing procedure was constitutionally defective. *Id.* at 715[4,5]. The Western District added that the circuit court's judgment demonstrated a misconception of its function in cases under § 302.535. The opinion explained:

> "Section 302.535.1 expressly withholds from circuit judges the power to review the administrative decision made as to driver's license suspensions after hearings are conducted pursuant to § 302.530. The statute authorizes trial de novo, meaning a trial anew, *Black's Law Dictionary* (5th Ed.1979), and states in part: 'Such trial shall be conducted pursuant to the Missouri rules of civil procedure and not as an appeal of an administrative decision pursuant to Chapter 536, RSMo.' The trial de novo had under § 302.535 is an original proceeding and is an exercise of an original and not a review jurisdiction. *Collins v. Director of Revenue*, 691 S.W.2d 246 (Mo. banc 1985).
>
> The trial judge erred in this case when he ordered the case remanded to the Department of Revenue, for whatever cause, because such order was beyond his jurisdiction in deciding a case of original jurisdiction." *Dove*, 704 S.W.2d at 715[6] and [7].

Another of the cases cited by James in support of his first point is *Kenagy v. Director of Revenue*, 719 S.W.2d 488 (Mo. App.1986), also a de novo proceeding under § 302.535.1. There the circuit court entered judgment reinstating an arrestee's suspended driver's license. The judgment stated, in part, that the order of the Department of Revenue was made without probable cause to show that the arrestee was operating the motor vehicle with an alcoholic concentration in his blood of .13 per cent or more by weight. The appellate court stated that by using such language the circuit court appeared to be passing upon or reviewing the administrative hearing officer's decision. *Id.* at 490. The opinion emphasized that the circuit court is to conduct a trial de novo under § 302.535, not a review of the administrative hearing officer's decision, and that the trial is an original proceeding, not merely a review. *Id.* Consequently, said the opinion, the circuit court should enter judgment based on the evidence presented to it during trial. *Id.*

In examining § 302.535 we see it does not specify any issues that a circuit court is to determine in the trial de novo. It is noteworthy, however, that the trial de novo is the next step for an aggrieved licensee after an adverse decision by an administrative hearing examiner. Section 302.530.4 [8] provides that the sole issue at the administrative hearing shall be whether by a preponderance of the evidence the licensee was driving a vehicle under the circumstances set out in § 302.505.[9]

■ In *Collins v. Director of Revenue*, 691 S.W.2d 246 (Mo. banc 1985), the third case cited by James in support of his first point, the Supreme Court of Missouri construed § 302.505.1, saying:

> "We interpret § 302.505.1 as requiring that a suspect first be arrested upon probable cause to believe that he or she is driving in violation of § 577.010 or 577.012. Once arrested, if the suspect submits to a chemical analysis and the results of such test indicate that the ar-

---

**8.** Footnote 3, *supra.*

**9.** Footnote 1, *supra.*

restee possesses a blood alcohol concentration of at least .13 percent, he or she is subject to suspension of driving privileges. The Department of Revenue is then required to determine, upon a preponderance of the evidence, based on the officer's verified report and the breathalyzer test results, whether the defendant had been driving while his or her blood alcohol concentration was at least .13 percent." *Id.* at 252[11,12].

Reading the above passage in conjunction with § 302.530.4, it is evident that the issues to be resolved at the administrative hearing are (1) whether the licensee was arrested upon probable cause to believe he was driving a motor vehicle in violation of § 577.010 [10] or § 577.012,[11] and (2) whether such person was driving while his blood alcohol concentration was at least .13 per cent. *See: Stewart v. Director of Revenue,* 702 S.W.2d 472, 475[5] (Mo. banc 1986).

The Supreme Court of Missouri in *Stewart* affirmed a circuit court judgment (upon trial de novo) upholding a driver's license suspension where the evidence before the circuit court was sufficient to establish the two elements set forth in the preceding paragraph. *Id.* at 475–76[8–10]. *See also: Strode v. Director of Revenue,* 724 S.W.2d 245, 248 (Mo. banc 1987).

James emphasizes that nowhere in the circuit court's letter to counsel or judgment in the instant case are there any findings on the two issues set forth above. Furthermore, says James, the portion of the judgment stating that the Director's decision to suspend or revoke James' driving privileges is affirmed "clearly shows where the trial judge failed to decide this case on the merits and passed upon and reviewed the decision of the administrative hearing officer."

We find James' first point unpersuasive. First, the record before us does not reveal what evidence was presented to the administrative hearing officer, nor does the record demonstrate that the circuit court was shown the evidence upon which the administrative hearing officer based his decision. The administrative hearing officer's findings of fact and conclusions of law recite, however, that the only persons present at the administrative hearing were the hearing officer, James, and James' lawyer. It is thus inferable that the hearing officer based his decision on records in the Department of Revenue file pertaining to James' driver's license, a procedure approved in *Collins,* 691 S.W.2d at 254–55[24], and *Stewart,* 702 S.W.2d at 475[6].[12] The circuit court, by contrast, heard testimony from James and the police officer who arrested him.

Second, it is manifest that the pivotal issue at the trial de novo was whether the circuit court could properly consider as evidence the results of the "breath analysis" over James' objection that such results were unlawfully obtained. James, in his testimony at the trial de novo, admitted he was the driver of the motor vehicle and that he was arrested by the police officer. The officer's testimony at the trial de novo was ample to support a finding that he had probable cause to arrest James for driving while intoxicated (§ 577.010), that the machine used for the breath analysis was functioning properly, and that the officer operated the machine correctly. The test results, as reported earlier, showed an alcohol concentration in James' blood of .145 per cent. It is thus apparent that if the question of admissibility of the test results

10. Section 577.010.1 provides: "A person commits the crime of **'driving while intoxicated'** if he operates a motor vehicle while in an intoxicated ... condition."

11. Section 577.012.1 provides: "A person commits the crime of **'driving with excessive blood alcohol content'** if he operates a motor vehicle in this state with ten-hundredths of one percent or more by weight of alcohol in his blood."

12. Counsel for the Director presented copies of the police officer's "Blood Alcohol Test Report, BAC Verifier" and the "print-out of the results" of the breath analysis to the circuit court at the trial de novo. These documents were in the Director's file pertaining to James' driver's license, and were presumably considered by the administrative hearing officer. James has not included such documents in the record on appeal.

was resolved adversely to James by the circuit court, there was abundant evidence before that court to support all of the findings required to sustain the suspension of James' driver's license.[13] Indeed, James implicitly concedes as much in this appeal, as his only other point is that the "breath test results" upon which the circuit court presumably relied in rendering its judgment were inadmissible, having been unlawfully obtained. James makes no other attack on the sufficiency of the evidence to establish that he was (1) arrested upon probable cause to believe he was driving a motor vehicle while intoxicated, and (2) driving while his blood alcohol concentration was at least .13 per cent by weight.

While it would have been preferable for the circuit court to make findings on those issues, failure of a circuit court to do so in *Strode*, 724 S.W.2d 245, did not cause the Supreme Court of Missouri to remand the case for that purpose. In *Strode* the circuit court reversed the suspension of an arrestee's driver's license, holding that the arrest was invalid because the requirements of a statute were not met by the arresting officer. The Supreme Court determined that the arrest (for violation of a municipal ordinance) was valid. *Id.* at 248. The Supreme Court also determined that the State's evidence met the burden of showing that the arresting officer had probable cause for the arrest and that the arrestee had an alcohol concentration in his

blood of .13 per cent or more. *Id.* at 248[4]. The Supreme Court reversed the judgment and sent the case back to the circuit court for entry of a judgment reinstating the suspension of the license.

If it was unnecessary to remand for findings on the issues of probable cause and blood alcohol concentration in *Strode*, it is clearly unnecessary here.[14] As emphasized earlier there was no contention in the circuit court in the instant case (and there is none here) that the evidence was insufficient to support a finding that (a) the police officer had probable cause to arrest James for driving a motor vehicle while intoxicated, or (b) James was driving while his blood alcohol concentration was at least .13 per cent by weight.

Our review in this court-tried case is governed by *Murphy v. Carron*, 536 S.W. 2d 30, 32[1] (Mo. banc 1976). The judgment of the circuit court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Thurmond v. Director of Revenue*, 759 S.W.2d 898, 899 (Mo.App.1988); *Tuggle v. Director of Revenue*, 727 S.W.2d 168, 169 (Mo.App.1987). Where, as here, neither party specified any fact issues for the circuit court to resolve and the circuit court resolved none, all fact issues shall be considered as having been found in accordance

---

13. James' argument in his primary brief states, "The trial court can't simply rely upon the decision of the Director ... to decide whether to 'suspend or revoke' Mr. James' driver's license; rather, the trial court must enter his own order to suspend Mr. James' driver's license after assessing the facts and making his own findings thereon." That bizarre notion is totally unsupported in the applicable statutes, §§ 302.-500–.540. It is indisputably clear that at the time a petition for trial de novo is filed the suspension of the arrestee's driver's license by the Director is already in effect. Section 302.-535.2 states: "The filing of a petition for trial de novo shall not result in a stay of the suspension or revocation order." James' hypothesis that the circuit court must enter its own order suspending an arrestee's driver's license would result in *two* suspension orders, one by the Director and a later one by the circuit court, a patent absurdity. James evidently realized this

after receiving the Director's brief, as James says in his reply brief, "Appellant believes that the trial judge should have simply denied his petition if the evidence supported a verdict for the Director."

14. The instant case is unlike *Thurman v. Director of Revenue*, 745 S.W.2d 260 (Mo.App. 1988), where the Eastern District of this Court found it necessary to remand the case to the circuit court for findings of fact. In *Thurman* the Director's uncontradicted evidence at the trial de novo made a prima facie case supporting suspension of the arrestee's license, yet the circuit court, without explanation, set aside the administrative suspension and reinstated the license. In those unique circumstances the Eastern District was unable, absent findings of fact, to determine whether the circuit court's judgment was supported by substantial evidence. *Id.* at 262.

with the result reached, Rule 73.01(a)(2) [15]; *Scott v. Director of Revenue*, 755 S.W.2d 751, 752[1] (Mo.App.1988), and the judgment will be upheld under any reasonable theory supported by the evidence. *O'Bar v. Nickels*, 698 S.W.2d 950, 955[1] (Mo.App. 1985); *Elliott v. West*, 665 S.W.2d 683, 689–90[4] (Mo.App.1984).

James, in arguing his first point, appears to assume that because the circuit court's judgment affirmed the Director's decision to suspend James' driver's license, the circuit court "exercised review jurisdiction" instead of entering judgment based on the evidence at the trial de novo. If that be James' assumption it is wrong. It is unmistakably clear to us that the circuit court made its own independent determination on the issue of admissibility of the results of the "breath analysis" based on its understanding of the law, and recognized—correctly—that if such results were admissible there was ample evidence at the trial de novo to sustain the suspension of James' license. Once the circuit court decided the admissibility issue adversely to James the circuit court properly entered judgment sustaining the order previously entered by the Director suspending the license. There is absolutely nothing in the record on appeal even remotely suggesting that the circuit court believed its duty was to determine whether the record before the administrative hearing officer—whatever it may have been—was sufficient to support the administrative hearing officer's decision. Had the circuit court entertained that belief there would have been no reason for it to hear the evidence at the trial de novo. Indeed, the portion of the circuit court's judgment quoted earlier specifically states that the circuit court is affirming the Director's decision to suspend James' driving privileges. The judgment makes no reference to the administrative hearing officer's decision sustaining the suspension.

We have already held there was sufficient evidence at the trial de novo to support all findings required for the circuit court to sustain the suspension of James' driver's license (assuming the results of the "breath analysis" were admissible, a subject to be discussed in our consideration of James' second point). Having rejected James' hypothesis that the circuit court reviewed the administrative hearing officer's decision instead of basing its judgment on the evidence presented at the trial de novo, and being mindful that all facts are deemed found in accordance with the result reached, we assume the circuit court found that the police officer had probable cause to arrest James for driving a motor vehicle while intoxicated and that James was driving while his blood alcohol concentration was at least .13 per cent. James' first point is denied.

His second point is:

"The trial court's judgment was erroneous and not supported by competent and admissible evidence because the breath test results upon which the trial court presumably based his judgment were obtained by police officers from Mr. James by coercion and in violation of Mr. James' right to consult with counsel, in that, police officers failed to provide Mr. James the opportunity to contact counsel although he requested to do so."

James' contention that the circuit court based its judgment on the "breath test results" is seemingly inconsistent with James' theory in his first point that the circuit court reviewed the administrative hearing officer's decision instead of entering judgment based on the evidence presented at the trial de novo. Inconsistent or not, the second point is without merit.

James points out that the circuit court made no findings on whether the police officer violated James' right under

15. Rule references are to Missouri Rules of Civil Procedure (19th ed. 1988). James, in his brief, states he requested the circuit court to make findings of fact as to whether the police officer (a) violated James' right to consult counsel and (b) coerced James into taking the "breath test." That request, however, came after the case had been submitted to the circuit court and after the circuit court had informed the parties of its decision on the issue of admissibility of the test results. James' request for findings of fact was thus untimely. Rule 73.01(a)(2); *Small v. Small*, 706 S.W.2d 294, 295[1] (Mo.App.1986).

§ 544.170 to consult counsel or whether the officer coerced James into taking the "breath test" in violation of § 577.041.1. The circuit court obviously decided it was unnecessary to make such findings, as the circuit court held that the "exclusionary rule" did not apply in a proceeding under § 302.535.

James proclaims, "The law of Missouri has always been that evidence obtained illegally in violation of a constitutional or statutory restriction or guarantee is incompetent and inadmissible, even in civil trials." James cites one decision of the Supreme Court of Missouri in support of that proposition, *Diener v. Mid–American Coaches, Inc.*, 378 S.W.2d 509 (Mo.1964). The Supreme Court evidently does not read *Diener* as broadly as James, as indicated by this passage from *In re Littleton*, 719 S.W.2d 772 (Mo. banc 1986):

"... we note that evidence obtained in an illegal or unethical manner is not subject to an exclusionary rule except in criminal cases. *See Diener v. Mid–American Coaches, Inc.*, 378 S.W.2d [at] 511...." *Littleton*, 719 S.W.2d at 775 n. 2.

The closest a Missouri appellate court has come to deciding the admissibility issue raised by James' second point is *Green v. Director of Revenue*, 745 S.W.2d 818 (Mo. App.1988), an appeal by an arrestee from a circuit court judgment upholding the administrative revocation of the arrestee's driver's license per § 577.041.1 for refusal to submit to a chemical test to determine the alcohol content of his blood. There a municipal police officer saw a motor vehicle driven by the arrestee "run a stop sign" inside the city limits. The officer pursued the vehicle, stopping it outside the city. The officer detected an odor of alcoholic beverage on the arrestee's breath; the arrestee admitted he had been drinking. The officer radioed the county sheriff's department for assistance, stating his belief that the arrestee was intoxicated. A deputy sheriff arrived, questioned the arrestee, and administered field sobriety tests, which the arrestee was unsuccessful in performing. The deputy sheriff placed the arrestee under arrest for the stop sign violation

and for driving while intoxicated. The arrestee subsequently refused to take a breathalyzer test, which refusal was the basis for the revocation of his license by the Director. The arrestee requested a circuit court hearing per § 577.041.2, which provides that the judge shall determine three questions: (1) whether such person was arrested, (2) whether the arresting officer had reasonable grounds to believe such person was driving a motor vehicle while in an intoxicated condition, and (3) whether such person refused to submit to the test. If the judge determines any issue not to be in the affirmative, he shall order the Director to reinstate the license. § 577.041.3.

The arrestee's position in *Green* was that the initial stop by the municipal police officer was an unlawful arrest—a point conceded by the Director—and that the later arrest by the deputy sheriff was an exploitation of the earlier unlawful arrest. Thus, argued the arrestee, the evidence gained by the deputy sheriff was tainted, necessitating its exclusion. *Id.* at 819–20.

The Western District of this Court stated the precise question in *Green* was whether the exclusionary rule should be applied. *Id.* at 820. On that issue the Western District looked for guidance to *Westendorf v. Iowa Dept. of Transp.*, 400 N.W.2d 553 (Iowa 1987), a case where an arrestee's driver's license was revoked because a chemical test demonstrated alcohol intoxication. An Iowa district court reversed the revocation, holding that the arresting officer did not have probable cause to stop the vehicle the arrestee was driving, and impliedly holding that the test result should consequently have been excluded from evidence. *Id.* at 554. The Supreme Court of Iowa, noting that the license revocation proceeding was civil and not criminal in nature, *id.*, analyzed pertinent decisions of the Supreme Court of the United States and concluded that the exclusionary rule was inapplicable, hence the district court (which exercised judicial review over the agency decision under the Iowa procedure) should have considered all of the evidence presented at the agency hearing. *Id.* at

557. The Supreme Court of Iowa declared that the license was correctly revoked. *Id.*

The Western District of this Court in *Green* embraced the reasoning of *Westendorf,* held that the exclusionary rule did not apply, and affirmed the judgment upholding the revocation. *Green,* 745 S.W.2d at 820–21.

James attempts to distinguish *Green* by pointing out it involved a proceeding under § 577.041 (a "refusal" revocation). James asserts that the role of the circuit court in such a case is to review the decision of the Director to revoke the license, not to conduct a trial de novo.

We see little difference between the role of the circuit court in a proceeding under § 577.041 (*Green*) and a proceeding under § 302.535 (the instant case). In the former the circuit court, as we have seen, is required to determine whether the licensee was arrested, whether the arresting officer had reasonable grounds to believe the licensee was driving a motor vehicle while in an intoxicated condition, and whether the licensee refused to submit to the test. In the latter, as we have seen, the issues for the circuit court to determine are whether the licensee was arrested upon probable cause to believe he was driving a motor vehicle while intoxicated (§ 577.010) or with excessive blood alcohol content (§ 577.012), and whether his blood alcohol concentration at such time was at least .13 per cent. In a circuit court hearing under § 577.041 the State has the burden of proving the three required elements, and must offer evidence first. *Delaney v. Missouri Department of Revenue,* 657 S.W.2d 354, 356[1] (Mo.App. 1983); *Askins v. James,* 642 S.W.2d 383, 385[1] (Mo.App.1982). In a circuit court trial de novo under § 302.535 the burden of proof is on the State to prove the two required elements. *Stewart,* 702 S.W.2d at 475[8]. In both types of cases the circuit court's findings are made on the evidence presented to it, not on the administrative record.

■ If, as held in *Green,* the exclusionary rule does not apply in circuit court hearings under § 577.041.2, we see no justification for applying the exclusionary rule in circuit court trials de novo under § 302.535.1. The Western District in *Green* observed that the proceeding there was a civil proceeding. 745 S.W.2d at 820. James concedes in his brief that the instant case is a civil proceeding. We agree with the rationale of *Green* and *Westendorf,* and accordingly hold that the exclusionary rule does not apply in the instant case. Consequently, it was unnecessary for the circuit court to decide whether the police officer disregarded James' right under § 544.170 to consult counsel or whether the officer coerced James into taking the "breath test" in violation of § 577.041.1. The test results were admissible whether or not the officer's behavior contravened either statute.

James' second point is denied and the judgment is affirmed.

HOLSTEIN, C.J., and GREENE, J., concur.