**Kara Lynn ST. PIERRE, Petitioner–Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent–Appellant.**

**No. 23815.**

Missouri Court of Appeals,
Southern District,
Division One.

March 21, 2001.

---

Jeremiah W. (Jay) Nixon, Office of the Attorney General, Jefferson City and Mark Langworthy, Columbia, Attorneys for Appellant.

Jon A. Kaltenbronn, Lake Ozark, Attorney for Respondent.

SHRUM, J.

Citing part of Missouri's Implied Consent Law, specifically § 577.041, RSMo Cum.Supp.1999, Missouri's Director of Revenue ("Director") revoked the license of Kara Lynn St. Pierre ("St. Pierre") to operate a motor vehicle.[1] Director based the revocation on St. Pierre's refusal to submit to a chemical test of her breath pursuant to § 577.020.1.

St. Pierre petitioned the circuit court for review of Director's decision, per § 577.041.4. After an evidentiary hearing, the court entered a judgment which set aside the revocation and ordered St. Pierre's license reinstated. Director appeals. We reverse and order that the revocation of St. Pierre's driving privileges be reinstated.

The undisputed facts show Officer Todd Bithell ("Bithell") of the Linn Creek Police Department was westbound on Highway 54 during the evening hours of December 3, 1999. As he was driving, Bithell noticed

---

1. All statutory references are to RSMo Cum. Supp.1999, unless otherwise indicated.

a car attempting to pull onto the highway, via access from a side road, without properly signaling. As the car pulled onto the highway, a van almost hit the car, and only escaped the collision when the driver of the van slammed on the brakes. Upon witnessing the near accident, Bithell turned around and sought to pull the car over. However, between the time it took to turn around, maneuver past the van, and pull the car over, the car had left the city limits and was pulled over approximately two-tenths of a mile outside the city limits.

■ Immediately upon approaching the vehicle, Bithell noticed a strong odor of alcohol. The driver was identified as St. Pierre by her license. Bithell asked St. Pierre to step out of the car and walk to the back of it, and as she did so, he noticed "she staggered and swayed quite badly." Based on these observations, Bithell began to administer field sobriety tests. St. Pierre failed most of these, was arrested, and transported to the county sheriff's department. Bithell read both the *Miranda* warnings[2] and the Implied Consent Law to St. Pierre.[3] After this, St. Pierre refused to submit to a chemical test of her breath to detect her level of intoxication. Bithell then completed and submitted to Director an alcohol influence report and a narrative report describing his version of the stop and arrest. Acting on Bithell's reports, Director revoked St. Pierre's license for refusal to take the test. St. Pierre then filed a petition for review with the circuit court.

2. In *Miranda v. Arizona,* the U.S. Supreme Court set out what have come to be known as "the *Miranda* warnings" as a "procedural safeguard" designed to protect an individual's privilege against self-incrimination. 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630 [66, 67], 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

3. When an arresting officer requests a driver to "submit to any test allowed [by] section 577.020," the officer must "inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test." § 577.041.

■ At trial, Bithell acknowledged his pursuit of St. Pierre ended when he stopped and arrested her outside the corporate limits of Linn Creek. When asked on cross-examination about Linn Creek's "fresh pursuit" policy as required by § 544.157.4, he disclaimed any knowledge about such policy, saying: "I have no idea. I don't have it with me.... I would have to refer to it." Director rested his case without putting in evidence the fresh pursuit policy of Linn Creek.[4] St. Pierre then argued Director had not proved a valid arrest or a valid refusal because of the absence of the policy provisions. The trial court agreed as evidenced by the following comments:

> "The Court has considered the evidence in this particular case. There is only one issue as far as the Court's concerned. It's whether there was this policy has to be presented to the Court for it to be a valid arrest. That is the only issue. As far as the rest of it I would find all issues in favor of [Director]."
>
> . . . .
>
> "No one has even told me what those minimum [fresh pursuit] standards are and if they are met by that policy so I did not find [Director] has met [his] burden in reference to that particular issue. And for that reason alone, I'm going to find in favor of [St. Pierre] and against [Director]...."

Thereon, the court entered judgment for St. Pierre. This appeal by Director followed.[5]

4. Sections 544.155 and 544.157 comprise Missouri's "Uniform Fresh Pursuit Law." These sections describe the procedures an officer is to follow when a vehicle the officer is attempting to pull over leaves the officer's jurisdiction. The act further delineates the minimum standards to be met in accordance with the law. As to § 544.157.4, it provides that "[a] public agency electing to institute vehicular pursuits shall adopt a policy for the safe conduct of vehicular pursuits by peace officers."

5. We note a trial judge's oral comments, although not part of the court's judgment, may

Rule 84.13(d) sets forth the standard governing this court's review in a case tried without a jury.[6] In *Murphy v. Carron*, 536 S.W.2d 30, 32[1](Mo.banc 1976), the Supreme Court of Missouri interpreted the predecessor of that rule to mean the trial court's judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. "That standard applies to appellate review in a proceeding under § 577.041.4." *Calicotte v. Director of Revenue*, 20 S.W.3d 588, 591 (Mo.App.2000).

Three prerequisites must be found before a trial court can uphold Director's decision to revoke a person's driving privileges for failure to submit to a chemical test pursuant to § 577.041: (1) the driver was arrested; (2) the arresting officer had reasonable grounds to believe the driver was driving while intoxicated; and (3) the driver refused to submit to a chemical test. *Sutton v. Director of Revenue*, 20 S.W.3d 918, 921 (Mo.App.2000); § 577.041.4.

Director's sole point relied upon claims the trial court erred in setting aside the revocation because Director unequivocally proved these prerequisites, thus proving his prima facie case. He argues that since St. Pierre failed to adduce *any* evidence at the hearing to rebut the prima facie showing, the trial court had no alternative but to uphold the revocation. Continuing, Director insists the court misapplied the law in this case by either (a) using the "exclusionary rule" (which is inapplicable in civil cases) to exclude all of Director's evidence, or (b) implicitly finding that compliance with § 544.157.4 (the applicable provision

of the "Uniform Fresh Pursuit Law") was an essential element of a § 577.041 license revocation case. We agree that the trial court misapplied the law.

The exclusionary rule is a judicially-created means of deterring illegal searches and arrests by preventing the evidence collected by that method from being used at trial when the purpose of the case being prosecuted is to punish an offender. *Riche v. Director of Revenue*, 987 S.W.2d 331, 334 (Mo.banc 1999). The rule does not, however, "'proscribe the introduction of illegally seized evidence in all proceedings or against all persons.'" *Id.* (quoting *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). Thus, there is a plethora of relevant Missouri cases which recognize the inapplicability of the Fourth Amendment's exclusionary rule to a circuit court's review of Director's action in revoking a driver's license because the proceeding is civil in nature; consequently, Director can use evidence in license revocation proceedings that would be viewed as illegally obtained and excluded if offered in a criminal case. *See e.g. Riche*, 987 S.W.2d 331 (§ 302.505 suspension); *Sterneker v. Director of Revenue*, 3 S.W.3d 808 (Mo.App.1999) (§ 302.505 revocation where driver complained arrest outside city limits was invalid for lack of "fresh pursuit" policy); *Jennings v. Director of Revenue*, 992 S.W.2d 249 (Mo.App.1999) (§ 302.505 suspension where driver complained arrest outside city limits was invalid for lack of "fresh pursuit" policy); *Sullins v. Director of Revenue*, 893 S.W.2d 848 (Mo.App.1995) (§ 577.041 revocation); *Sulls v. Director of Revenue*, 819 S.W.2d 782 (Mo.App.1991) (§ 302.505 suspension).

Particularly instructive here is the *Sullins* case. There a Houston, Missouri, policeman pursued a driver via high speed

---

be considered as an explanation of the judgment, *see Matter of Fulton*, 863 S.W.2d 931, 933[2] (Mo.App.1993), when as here, the comments do not oppose, dispute, or impeach the judgment and are not used as a substitute for the judgment. *Thornton v. Deaconess Medical Center–West*, 929 S.W.2d 872, 873[1] (Mo. App.1996).

6. All rule references are to supreme court rules (2001), unless otherwise indicated.

chase to a point outside the Houston city limits. At that point, the driver wrecked his car, and the officer arrested him. The driver refused to take the chemical test; consequently, Director revoked his license per § 577.041. The circuit court, upon review of Director's decision, reversed the revocation after finding the arrest was invalid because it was effected by a municipal officer outside the city limits. We reversed, holding the validity of the arrest was irrelevant in the § 577.041 license revocation proceeding because the exclusionary rule does not apply in civil proceedings. *Sullins*, 893 S.W.2d at 850.

St. Pierre argues *Sullins* does not control because the fresh pursuit law was not an issue in that case. Such argument is answered by the *Sterneker* case. There, a Gallatin, Missouri, policeman arrested a driver three miles beyond the city limits. After the driver was arrested, his blood alcohol content was measured at 0.173 percent, and Director revoked his license under § 302.505. Upon appeal, the circuit court reversed, finding there was no proof the arresting officer had "fresh pursuit" authority because no evidence was adduced that Gallatin had adopted a "fresh pursuit" policy as mandated by § 544.157.4. *Sterneker*, 3 S.W.3d at 809 n. 3. The western district reversed, and held: "Because this is not a criminal case, but an administrative law or civil case, the circuit court erred in imposing a criminal procedure statute, § 544.157, on the strictures mandated by the General Assembly for a case involving a driving license." *Id.* at 810 (citing *Jennings*, 992 S.W.2d 249). Continuing, the *Sterneker* court observed, "[w]ere we to add to § 302.510 the requirements which the circuit court imposed [compliance with § 544.157.4(4) ], we would, in effect, be rewriting the statute. Because revocation of a driving license is a matter solely of statutory creation, the courts must follow the method provided by the General Assembly in Chapter 302, if it is adequate." *Id.* at 811.

Based on *Riche, Sterneker, Jennings*, and *Sullins*, we conclude that even if Linn Creek had no fresh pursuit policy and its absence resulted in an illegal arrest—a finding we need not and do not make—all evidence collected as a result of the pursuit, stop, and arrest was still not excludable via the exclusionary rule. To require proof that Linn Creek had such a policy would in effect be a rewriting of § 577.041, which is not the function of this court. The cases mentioned amply support our determination that in a proceeding under § 577.041, the exclusionary rule is inapplicable regardless of the requirements of § 544.157. The trial court erred by finding Director here failed to meet his burden of proof. Substantial evidence in the record shows: (1) St. Pierre was arrested, (2) the arresting officer had reasonable grounds to believe St Pierre was driving a motor vehicle while in an intoxicated condition, and (3) St. Pierre refused to submit to the test.

We are authorized to enter the judgment the trial court should have entered. Rule 84.14; *Sullins*, 893 S.W.2d at 850. The judgment of the trial court is reversed. The Director's revocation of St. Pierre's driving privileges is reinstated.

PARRISH, P.J., and MONTGOMERY, J., concur.